UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

| | |
|---|---|
| AUTUMN N. PAKRAVAN,        ) | |
|                         ) | |
|     Plaintiff,             ) | |
|                         ) | |
| v.                         ) | Case No.: 2:12-cv-472 |
|                         ) | |
| CAROLYN W. COLVIN,      ) | |
| Acting Commissioner,       ) | |
| Social Security Administration,   ) | |
|                         ) | |
|     Defendant.           ) | |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff Autumn N. Pakravan ("Ms. Pakravan") seeks judicial review of the final decision of the Defendant, the Acting Commissioner of the Social Security Administration ("Acting Commissioner"), which denied Ms. Pakravan's claim for Disability Insurance Benefits ("DIB") pursuant to Title II, and her claim for Supplemental Social Security Income ("SSI") pursuant to Title XVI, of the Social Security Act. Both parties filed motions for summary judgment, ECF Nos. 18 and 20, with briefs in support, ECF Nos. 19 and 21, which are now ready for resolution.

This action was referred to the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. For the following reasons, the undersigned **RECOMMENDS** that Ms. Pakravan's Motion for Summary Judgment, ECF No. 18 be **GRANTED** to the extent it seeks reversal and

remand of the Acting Commissioner's decision; the Defendant's Motion for Summary Judgment, ECF No. 20, be **DENIED**; and the final decision of the Acting Commissioner be **VACATED** and that this case be **REMANDED FOR FURTHER PROCEEDINGS**.

## I. PROCEDURAL BACKGROUND

Ms. Pakravan filed applications for DIB and SSI on August 22, 2008. R. 227-33.[1] Both applications were initially denied on October 24, 2008, R. 121-26, and denied again upon reconsideration on October 26, 2009. R. 130-34. Ms. Pakravan requested a hearing in front of an administrative law judge ("ALJ") on December 30, 2009, R. 135-36, which was held on March 23, 2011.[2] R. 31-53. The ALJ issued his decision on April 28, 2011 that denied both Ms. Pakravan's DBI and SSI applications. R. 15-26. The Appeals Council for the Office of Disability and Adjudication ("Appeals Council") denied Ms. Pakravan's request for review of the ALJ's decision on May 4, 2012. R. 10-14. After exhausting her administrative remedies, Ms. Pakravan filed her complaint for judicial review of the Acting Commissioner's final decision on August 24, 2012. ECF No. 5. The Acting Commissioner filed an Answer on March 13, 2013, ECF No. 9. Because both parties have filed motions for summary judgment, the matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Acting Commissioner's final decision is limited to determining whether the Acting Commissioner's decision was supported by

---

[1] "R." refers to the certified administrative record that was filed under seal on March 15, 2013, pursuant to Local Civil Rules 5(B) and 7(C)(1). It also appears from the record that Ms. Pakravan previously filed an application for Social Security disability benefits that was denied by an ALJ decision issued in February of 2008. R. 20, 24. However, this prior decision was not made part of the current record and therefore it has not been considered by the Court on this review.

[2] On December 14, 2010, a hearing was held in front of an ALJ, but Ms. Pakravan did not appear. R. 27-30. The hearing was rescheduled and held on March 23, 2011. R. 31-53.

substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938))). While the standard is high, where the ALJ's determination is not supported by substantial evidence on the record, or where the ALJ has made an error of law, the district court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

In determining whether the Acting Commissioner's decision is supported by substantial evidence, the Court must examine the record as a whole, but it may not "undertake to re-weigh the conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (citing *Craig v. Chater*, 76 F.3d at 589 (4th Cir. 1996)). The Acting Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. *Perales*, 402 U.S. at 390. Moreover, the Acting Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays*, 907 F.2d at 1456-57. Overall, if the Acting Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the Court is to affirm the Acting Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996) (granting the Commissioner latitude in resolving inconsistencies in the evidence, which the Court reviews for clear error or lack of substantial evidence).

### III. <u>ALJ's FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

The ALJ is required to employ a five-step sequential evaluation in every Social Security disability claim analysis to determine the claimant's eligibility. It is this five-step process that the Court examines on appeal to determine whether the correct legal standards were applied and whether the resulting decision of the Acting Commissioner is supported by substantial evidence in the record. 20 C.F.R. §§ 404.1520 and 416.920.

In accordance with the five-step sequential analysis, the ALJ made the following findings of fact and conclusions of law: First, Ms. Pakravan has not engaged in substantial gainful activity ("SGA") since May 1, 2008, the alleged onset date of disability, and she met the insured status requirements of the Social Security Act through March 31, 2010, the date last insured ("DLI"). R. 21. Second, Ms. Pakravan had the following severe impairments: bilateral extremity edema, etiology unknown, and syncope, etiology unknown. *Id.* The ALJ went on to find that these two "severe impairments and their symptoms have limited the claimant's ability to perform the mental demands of basic work activities, including understanding and carrying out complex tasks." *Id.* However, the ALJ found that all other alleged impairments were nonsevere—abdominal distention, cystic fibrosis, cardiac-related problems, chronic obstructive pulmonary disease, and shortness of breath—because "they did not exist for a continuous period of at least 12 months, were responsive to medication, did not require any significant medical treatment, or did not result in any continuous exertional or nonexertional functional limitations." *Id.* Third, Ms. Pakravan does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 21. Fourth, Ms. Pakravan has the residual functional capacity ("RFC") to perform the full

4

range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). R. 22-25. Fifth, while Ms. Pakravan had no past relevant work, the ALJ found that considering her age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Ms. Pakravan could perform. R. 25-26. Therefore, the ALJ determined that Ms. Pakravan has not been under a disability from May 1, 2008 through April 28, 2011, the date of the ALJ's decision. R. 26.

## IV. RELEVANT FACTUAL BACKGROUND

Initially, in both applications, Ms. Pakravan alleged a disability onset date of June 26, 1998. R. 227, 230. Subsequently, Ms. Pakravan filed an amendment to her application that changed the alleged disability onset date to May 1, 2008. R. 234-35. As of that date, Ms. Pakravan was a single, 36 year-old female who graduated from high school and attended college for one year. R. 25, 39-40. At the ALJ Hearing held on March 23, 2011, Ms. Pakrvan provided the following testimony:

Ms. Pakravan has not worked since May of 2008, when she was a stock clerk at Big Lots, where she worked for approximately three weeks, before she injured her arm while unloading a recliner from a truck. R. 40. Prior to that, in 1998 she held a part-time job at night as a cook at Pizza Hut, where she sustained a closed-head injury after slipping on water and hitting her head. R. 41. During that same period of time, she worked part-time during the day as a stock clerk at a health food store called Heritage. R. 41-42. After the closed head injury in 1998, Ms. Pakravan started noticing the severe symptoms she complained of in her applications.[3] R. 43.

---

[3] Ms. Pakravan complains of the following impairments: suprasellar brain cyst, spinal injury, traumatic brain injury, postural headache, pituitary asymmetry, central nervous system lesion, gross tracking abnormality, nystagmus, pustular folliculitis, furuncles, basemembrane dystrophy, stromal dystrophy, and oculomotor abnormalities, which affect her ability to lift, bend, stoop, squat, see or hear well, and results in significant pain, swelling, and stiffness.

Specifically, Ms. Pakravan testified to fluid build-up (edema) in her abdomen, eyelids, legs, ankles, and feet.[4] *Id.* The fluid build-up worsened in her eyelids when she lay down, and alternatively worsened in her abdomen, legs, ankles, and feet when she sits or stands. R. 44. In addition to fluid build-up, Ms. Pakravan complained of headaches when she lay down, which was accompanied with blurry vision, nausea, and vomiting. R. 45. While Ms. Pakravan testified that the nausea is a daily occurrence, the vomiting only occurred approximately five times per month. *Id.* Lastly, Ms. Pakravan also noted stiffness in her neck and joints immediately after waking up. R. 45-46.

In reaching his decision, the ALJ found that Ms. Pakravan's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with his RFC assessment. R. 23. Specifically, the ALJ relied on, and summarized, medical reports from five treating physicians between 2008 and 2011, including an emergency room doctor, R. 23, 410-29, an ear, nose, and throat specialist, R. 23, 430-34, a neurologist, R. 23-24, 435-44, 472-75, an ophthalmologist, R. 24, 541-45, and a cardiovascular specialist, R. 24, 554-59. All five doctors reported generally "normal" findings, after performing physical examinations and radiological studies, including MRIs, x-rays, and CT scans, with no significant abnormalities, despite Ms. Pakravan's persistently odd combination of symptoms. R. 23-24, 410-44, 472-75, 541-45, 554-59.

Similarly, one Disability Determination Services ("DDS") consultant, who did not

---

Additionally, she complained of cervical cancer, liver damage, hypoglycemia, pneumonia, anemia, cystic fibrosis, heart attack, vertigo, and a possible aneurysm on the heart. R. 22, 263.

[4] The fluid build-up in the eyelids and abdomen allegedly dates back to 1998, while the fluid build-up in her legs, ankles, and feet just started in 2010. R. 44.

physically examine Ms. Pakravan but did review her medical records, concluded that the results of the physical examinations and radiological studies "were essentially within normal limits, other than slight range of motion deficits in the cervical spine." R. 24, 54-64. The second DDS consultant, Dr. Moreno, attempted to schedule two physical examinations with Ms. Pakravan, but she failed to appear at both appointments. R. 25. Likewise, clinical psychologist Dr. Walter attempted to schedule psychological examinations and testing around the same time, but Ms. Pakravan also did not attend that appointment. *Id.* Instead, DDS received a letter signed by Ms. Pakravan and her mother that stated Ms. Pakravant "elected not to attend the examination and questioned the examiner's credentials." *Id.*

Overall, even though the medical records and DDS consultants concluded Ms. Pakravan's physical examinations were generally normal with only minor abnormalities, the ALJ determined she had two severe impairments, bilateral extremity edema (swelling and fluid build-up) and syncope (risk of losing consciousness, fainting, passing out), which "limited her ability to perform the mental demands of basic work activities, including understanding and carrying out complex tasks." R. 21. Additionally, because "there [was] no evidence to fully assess her mental condition due to [Ms. Pakravan's] refusal to cooperate, [her] allegations could not be supported and her claim for benefits was denied." R. 25.

Ms. Pakravan raises two issues on review: First, she argues that the ALJ's RFC finding was insufficient because it improperly omitted nonexertional limitations. As a result of this omission, she argues the ALJ erred when he relied solely on the Medical-Vocational Guidelines, and instead was required to rely upon a vocational expert's testimony in determining whether there were "other jobs" in the national economy that she could perform. Second, she argues that

7

the ALJ's credibility finding was improper and failed to conform to agency regulations.  Because the Court agrees with Ms. Pakravan's first argument, the Court would reverse the final decision of the Acting Commissioner and remand the matter for further proceedings in front of the ALJ.

## IV. ANALYSIS

### A. The ALJ improperly relied solely on the Medical-Vocational Guidelines in determining that Ms. Pakravan was not disabled, and instead should have solicited testimony from a vocational expert.

In her first argument, Ms. Pakravan argues that the ALJ improperly relied on the Medical-Vocational Guidelines in 20 C.F.R. Part 404, Subpart P, Appendix 2 in finding her not disabled.  ECF No. 19 at 3-6.  Specifically, Ms. Pakravan claims that the ALJ improperly omitted nonexertional limitations from the RFC assessment, which were allegedly "well documented and confirmed in plaintiff's testimony and confirmed in her medical records."  ECF No. 19 at 6.  Because of this omission, Ms. Pakravan subsequently argues that the ALJ therefore committed reversible error by not soliciting vocational expert ("VE") testimony at the hearing, because the ALJ's "own decision found nonexertional limitations . . . ."  *Id.*

Limitations on a claimant's ability to meet certain demands of a job are characterized as exertional, nonexertional, or a combination of both.  20 C.F.R. § 404.1569a(a).  Exertional limitations relate to an individual's physical capacity to meet the strength demands of a job, specifically, demands for sitting, standing, walking, lifting, carrying, pushing, and pulling.  *Id.* Limitations that affect an individual's ability to meet the demands of a job other than the strength demands listed above are considered nonexertional.  *Id.*

After the ALJ has determined the individual's RFC, the ALJ then moves onto step five in the sequential analysis, to determine whether the individual is capable of performing other jobs

8

that exist in significant numbers in the national economy.  20 C.F.R. § 404.1520(g)(1).  Where a claimant suffers only exertional limitations, that is, where there are only limits on the individual's physical strength functioning, the ALJ consults the Medical-Vocational Guidelines, colloquially known as "the grids," located in 20 C.F.R. Part 404, Subpart P, Appendix 2.  20 C.F.R. § 404.1569a(b); *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989); *Cooper v. Sullivan*, 880 F.2d 1152, 1155 (9th Cir. 1989).  Because the grids are predicated on the claimant suffering from exertional limitations, conversely, the grids are not applicable if the claimant suffers solely from nonexertional limitations.  20 C.F.R. § 404.1569(a).

However, if a claimant suffers from both exertional and nonexertional limitations, then the ALJ consults the grids first to determine whether a rule directs a finding of disabled based on the exertional/strength requirement alone.  20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)(2).  If the claimant is found to be "disabled" on the strength requirement alone, then there is no need to examine the effects of nonexertional limitations.  Alternatively, if a grids rule directs a finding of "not disabled" based on the exertional limitations alone, then the ALJ cannot rely exclusively on the grids, but instead, the grids must be used as "a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations."  *Id.*; *see also Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989) (citing *Wilson v. Heckler*, 743 F.2d 218 (4th Cir. 1984)).  In such a situation, the testimony of a vocational expert is then necessary to assist the ALJ in determining whether there are jobs existing in significant numbers in the national economy that the claimant can perform.  *Walker*, 889 F.2d at 49-50.

Here, the ALJ found that Ms. Pakravan had two severe impairments: bilateral extremity

9

edema (swelling and fluid build-up in the extremities) and syncope (loss of consciousness or risk of "passing out"), both of which constitute exertional limitations because they impact Ms. Pakravan's ability to sit, stand, walk, lift, carry, push, and pull. Immediately thereafter, however, the ALJ stated: "These impairments and their symptoms have limited the claimant's ability to perform the mental demands of basic work activities, including understanding and carrying out complex tasks." R. 21. Ms. Pakravan contends that while the ALJ did not explicitly find the existence of additional nonexertional limitations, the ALJ did find that she has a limited ability to "perform the mental demands of basic work activities, including understanding and carrying out complex tasks," which then implicated the need for VE testimony.

The Government responds by arguing that the ALJ's use of the grids was proper, which take "administrative notice" of unskilled work that does not involve understanding and carrying out complex tasks, and therefore, no VE testimony was necessary to determine what other work Ms. Pakravan could perform. ECF. No. 21 at 11-13. Moreover, the Government argues that even if the Court finds "that the ALJ should have included the limitation against complex tasks in the RFC assessment . . . the omission has no impact on the outcome of this case because, as stated above, the Medical-Vocational Guidelines only rely upon jobs that contemplate very short and simple instructions." ECF No. 21 at 13.

The ALJ found Ms. Pakravan had nonexertional limitations when he stated her severe impairments "have limited [her] ability to perform the mental demands of basic work activities, including understanding and carrying out complex tasks." R. 21. Indeed, a limited ability to perform mental demands and to understand and carry out complex tasks implicate Ms. Pakravan's mental functioning, not her physical strength, or her ability to sit, stand, walk, lift,

10

carry, push, and pull. Therefore, by definition, such a finding can only be characterized as a nonexertional limitation. 20 C.F.R. § 404.1569a(a).

In finding both exertional and nonexertional limitations, when the ALJ determined that the grids directed a finding of "not disabled," *see* R. 26 ("a finding of 'not disabled' is directed by Medical-Vocational Rule 201.27."), he was then required to use the grids only as "a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations," and not as a dispositive formulation of Ms. Pakravan's disability determination. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)(2); *Walker*, 889 F.2d at 49-50. Moreover, the ALJ should have utilized a VE to assist in making the determination whether there are jobs existing in significant numbers in the national economy, by analyzing the effects of the claimant's nonexertional and exertional limitations and the claimant's RFC. The Fourth Circuit discussed such a situation in *Walker v. Bowen*:

> The proper inquiry . . . is whether the nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable . . . . Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the Secretary to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.

889 F.2d 47, 49-50 (4th Cir. 1989) (citing *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975)).

The Court is not persuaded by the Government's argument that any legal error made by the ALJ is saved by the "administrative notice" that unskilled jobs are automatically included in the relevant grids. Assuming that is true, the regulations explicitly state that "*[m]ost* sedentary

occupations fall within the skilled,[5] semi-skilled,[6] professional, administrative, technical, clerical, and benchwork classifications." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(a) (emphasis added). While "[a]pproximately 200 separate unskilled[7] sedentary occupations can be identified, each representing numerous jobs in the national economy," this fails to account for the ALJ's finding that Ms. Pakravan's impairments would limit her ability to perform the mental demands of basic work activities, including[8] understanding and carrying out complex tasks. In fact, based on the record alone that is devoid of VE testimony, the Court is unable to determine what effect, if any, Ms. Pakravan's mental limitations would have on her ability to complete the mental demands of basic or unskilled work, let alone skilled work and complex tasks, all of

---

[5] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. §§ 404.1568(c); 416.968(c).

[6] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." 20 C.F.R. §§ 404.1568(b); 416.968(b).

[7] Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing material s from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs. 20 C.F.R. §§ 404.1568(a); 416.968(a).

[8] The Acting Commissioner frames the ALJ's finding in this regard as limited to "understand[ing] and carry[ing]-out complex tasks." ECF No. 21 at 12. The ALJ's finding, however, is not so limited, as his very words indicate: "These impairments and their symptoms have limited the claimant's ability to perform the mental demands of basic work activities, including understanding and carrying out complex tasks." Contrary to the Acting Commissioner's attempt to parse this language, ECF No. 21 at 14, the use of the term "including" means "including, but not limited to." *See* BLACK'S LAW DICTIONARY 831 (9th ed. 2009) (defining "include" as "[t]o contain as a part of something. The participle *including* typically indicates a partial list . . . . But some drafters use phrases such as *including without limitation* and *including but not limited to* – which mean the same thing. See namely."); *cf. id.* at 1120 (defining "namely" as "[b]y name or particular mention . . . . The term indicates what is to be included by name. By contrast, *including* implies a partial list and indicates that something is not listed.").

which fall within "the full range of sedentary work." Furthermore, it is pure speculation for the Acting Commissioner to argue that such an error of omission is harmless, and that the outcome would not have changed had the ALJ solicited testimony from a VE, because the Acting Commissioner cannot proffer what the VE's testimony would have been.

"A district court's primary function in reviewing an administrative finding of no disability is to determine whether the ALJ's decision was supported by substantial evidence. 42 U.S.C. § 405(g); *see Knox v. Finch*, 427 F.2d 919, 920 (5th Cir. 1970). However, the court's duty does not end there. A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (additional citations omitted). Therefore, because the ALJ committed an error of law by relying solely on the Medical-Vocational guidelines to reach a determination of "not disabled," the Court would reverse the final decision of the Acting Commissioner and remand this matter for further proceedings in front of an ALJ. The Court would direct the ALJ, on remand, to solicit testimony from a VE to determine what limits, if any, Ms. Pakravan's nonexertional and mental impairments would have on her ability to obtain other work.

## B. The ALJ's Credibility Determination

Lastly, Ms. Pakravan argues that the ALJ's credibility finding was improper under the regulations. ECF No. 19 at 7. Specifically, Ms. Pakravan claims the credibility analysis was faulty because the ALJ discounted specific subjective complaints and instead proffered a "broad discussion of the medical evidence." *Id.* Also, Ms. Pakravan argues the ALJ ignored other required factors when he found her not credible because she was on medication and referred to both severe impairments as "etiology unknown." *Id.* at 8. The Acting Commissioner argues that

13

while credibility determinations are "virtually unreviewable by this court on appeal," the ALJ nonetheless recognized Ms. Pakravan's subjective complaints and testimony in properly weighing her credibility against that of the conflicting medical evidence in the record. ECF No. 21 at 18.

In using the well-known two-step process to analyze subjective complaints, the ALJ must take into account "all available evidence," and a credibility finding of Plaintiff's statements regarding the extent of any symptoms must be made by considering the objective medical evidence of symptoms, daily activities, aggravating factors, and any treatment or use of medications to relieve symptoms, to determine if such factors are consistent or contradictory with respect to Plaintiff's subjective complaints. *Craig v. Chater*, 76 F.3d 585, 595-96; SSR 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996). Throughout the analysis, the ALJ must provide sufficient explanation to substantiate his conclusions, including the weight assigned to relevant evidence, so that a reviewing court can evaluate the basis for the final decision. *Ivey v. Barnhart*, 393 F. Supp. 2d 387, 389-90 (E.D.N.C. 2005) (citing *Arnold v. Secretary*, 567 F.2d 258, 259 (4th Cir. 1977)). In order to find whether substantial evidence exists, the court is required to examine the record as a whole, but it may not "undertake to re-weigh the conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).

Here, the ALJ's credibility analysis is supported by substantial evidence in the record. The ALJ appropriately followed the two-step process, considered all of the subjective symptoms and testimony of Ms. Pakravan, R. 22-23, and then considered and summarized the relevant medical evidence as provided by treating physicians. R. 23-25. Indeed, the ALJ concluded that

14

Ms. Pakravan had two severe exertional impairments as discussed above, which was supported by the medical records provided by treating physicians, but went on to conclude that Ms. Pakravan's testimony was not credible, and gave greater weight to the other medical evidence. R. 23, 25. Therefore, this Court would find that the ALJ's credibility determination is supported by substantial evidence in the record.    However, this Court would reverse the Acting Commissioner's final decision and remand for further proceedings due to the error of law discussed in the previous section.

## V. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that Ms. Pakravan's Motion for Summary Judgment, ECF No. 18, be **GRANTED** to the extent it seeks reversal and remand of the Acting Commissioner's decision, the Defendant's Motion for Summary Judgment, ECF No. 20, be **DENIED**, the final decision of the Acting Commissioner be **VACATED**, and that this matter be **REMANDED FOR FURTHER PROCEEDINGS**.

## VI. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d).  A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

15

2.  A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made.  The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to amend the Defendant's name in the caption of the case to read, "Carolyn W. Colvin, Acting Commissioner, Social Security Administration," and is further **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
September 25, 2013

16

## CLERK'S MAILING CERTIFICATE

A copy of this Report and Recommendation was mailed on this date to the following:

Robert Wayne Gillikin, II
Rutter Mills LLP
160 W. Brambleton Avenue
Norfolk, Virginia 23510
Counsel for the Plaintiff

Karl Emmett Osterhout
Law Offices of Osterhout, Fulton-Brown LLC
521 Cedar Way, Suite 200
Oakmont, Pennsylvania 15139
Counsel for the Plaintiff

Kent Pendleton Porter
United States Attorney's Office
World Trade Center
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Counsel for the Defendant

 

 

_____
Fernado Galindo
Clerk of the Court

 

 

By:

     Deputy Clerk
     September _____, 2013